| | |
|---|---|
| MEGAN VOEKS, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br> v. <br><br> CLIENT SERVICES, INC., <br><br> Defendant. | Case No.: 19-cv-1832 <br><br> **CLASS ACTION COMPLAINT** <br><br> **Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331 and 1337. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Megan Voeks is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Each Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from that Plaintiff a debt allegedly incurred for personal, family, or household purposes.

5. Defendant Client Services, Inc. ("Client Services") is a debt collection agency with its principal offices located at 3451 Harry S Truman Blvd., St. Charles, MO 63301.

6. Client Services is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

7. Client Services is engaged in the business of collecting debts owed to others and incurred for personal, family, or household purposes.

8. Client Services is a debt collector as defined in 15 U.S.C. § 1692a.

## FACTS

9. On or around May 21, 2019, Defendant mailed a debt collection letter to Plaintiff Voeks regarding an alleged debt. A copy of this letter is attached to this complaint as Exhibit A.

10. Upon information and belief, the alleged debt referenced in Exhibit A was incurred for personal, family, or household purposes, namely a personal credit card.

11. Upon information and belief, Exhibit A is a form letter, generated by a computer, and with the information specific to the alleged debt inserted by the computer.

12. Upon information and belief, Exhibit A is a form debt collection letter, used by Defendant to attempt to collect alleged debts.

13. Upon information and belief, Exhibit A is the first written communication Defendant mailed to the consumer regarding this alleged debt.

14. Exhibit A contains language that largely reflects the statutory validation notice that the FDCPA, 15 U.S.C. § 1692g, requires debt collectors provide alleged debtors along with, or within five days of, the initial communication:

> Unless you notify our office within thirty (30) days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within thirty (30) days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request of this office in writing within thirty (30) days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

Exhibit A.

2

Case 2:19-cv-01832-LA   Filed 12/13/19   Page 2 of 16   Document 1

15. The header in <u>Exhibit A</u> states:

```
CURRENT CREDITOR: Citibank, N.A.
ACCOUNT NUMBER: XXXXXXXXXXX3816
BALANCE DUE: $1,177.08
REFERENCE NUMBER: ████8385
```

<u>Exhibit A</u>.

16. Upon information and belief, if <u>Exhibit A</u> was actually mailed on May 21, 2019, it would have been received on or after May 23, 2019.

17. If <u>Exhibit A</u> was received on May 23, 2019, the consumer would have until June 22, 2019 to mail out a request for validation. *Chauncey v. JDR Recovery Corp.*, 118 F.3d 516, 519 (7th Cir. 1997) (consumer triggers verification rights by mailing out written notice of dispute on thirtieth day after receiving validation notice).

18. <u>Exhibit A</u> also contains the following settlement offers:

> **Your Account Balance: $1,177.08**
> **Your Account Resolution Offer: $589.00**
> <u>**ACCOUNT RESOLUTION OFFER**</u>
> We are offering you the ability to resolve your account balance for the amount of $589.00. To accept this offer, our office must receive payment within forty (40) days of the date of this notice. This offer is contingent upon timely receipt of your payment. If payment is not received in our office within forty (40) days of the date of this notice, this offer will be withdrawn and will be deemed null and void, with the remainder of the balance being due and owing. We are not obligated to renew this offer. Please note that no interest will be added to your account balance through the course of Client Services, Inc. collection efforts concerning your account. This offer does not affect your right to dispute the debt as described above.

19. The above offer requires that the consumer's payment be *received* by June 30, 2019.

20. Statements such as a settlement offer is a "limited time offer," or that the offer expires on a specific date, or that payments must be received by that date, are false and misleading where such offer is available at any time.

21. Such statements are material false statements, as they impart in the unsophisticated consumer, a false belief that he or she must hurry to take advantage of a limited-time opportunity, when in reality, there is no such time limit.

3

22. The Seventh Circuit has established "safe harbor" language regarding settlement offers in collection letters:

> As in previous cases in which we have created safe-harbor language for use in cases under the Fair Debt Collection Practices Act, we think the present concern can be adequately addressed yet the unsophisticated consumer still be protected against receiving a false impression of his options by the debt collector's including with the offer the following language: "We are not obligated to renew this offer." The word "obligated" is strong and even the unsophisticated consumer will realize that there is a renewal possibility but that it is not assured.

*Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769, 775-76 (7th Cir. 2007).

23. Although <u>Exhibit A</u> includes the safe harbor language prescribed by *Evory*, such safe harbor language is overshadowed by the letter's prior statement that "This offer is contingent upon timely receipt of your payment. If payment is not received in our office within forty (40) days of the date of this notice, this offer will be withdrawn and will be deemed null and void, with the remainder of the balance being due and owing."

24. The implication of the safe harbor language, understood in the context of the letter, is that the "renewal possibility" only exists if the consumer accepts the offer and mails the payment within the 40-day window, but the payment does not actually reach the office by the deadline. *See, e.g., Al v. Van Ru Credit Corp.*, No. 17-cv-1738, 2018 U.S. Dist. LEXIS 70321, at *9-10 (E.D. Wis. Apr. 26, 2018) ("How the safe-harbor language would affect an unsophisticated consumer is a fact-specific question not amenable to resolution on a motion to dismiss."); *Pollak v. Portfolio Recovery Assocs., LLC*, 285 F. Supp. 3d 812, 834 (D.N.J. 2018) ("courts have found that if a collection letter contains the language, 'we are not obligated to renew this offer,' it does not violate the FDCPA, so long as the rest of the language in the collection letter does not contradict that safe harbor language.").

25. Where the Seventh Circuit prescribes safe-harbor language, this language is not "blessed" as generally acceptable---rather, the Seventh Circuit has made it clear that its safe-harbor language applies only in the specific "type" of case addressed in the opinion. *See Boucher v. Fin. Sys. of Green Bay*, 880 F.3d 362, 371 (7th Cir. 2018) ("debt collectors cannot immunize themselves from FDCPA liability by blindly copying and pasting the *Miller* safe harbor language without regard for whether that language is accurate under the circumstances."); *Evory*, 505 F.3d at 775-76 ("we think the *present concern* can be adequately addressed …"); *Bartlett v. Heibl*, 128 F.3d 497, 501 (7th Cir. 1997) ("We commend this redaction as a safe harbor for debt collectors who want to avoid liability for the kind of suit Bartlett has brought and now won. The qualification "for the kind of suit that Bartlett has brought and now won" is important. We are not certifying our letter against challenges based on other provisions of the statute; those provisions are not before us."); *see also O'Chaney v. Shapiro and Kreisman, LLC*, 2004 U.S. Dist LEXIS 5116, at *13 (N.D. Ill. Mar. 25, 2004) (rejecting the argument that a debt collector could avoid liability for use of safe harbor language where the Seventh Circuit expressly limited the reach of the language to different claims).

26. Reading the letters as a whole, the unsophisticated would understand the settlement offer included in <u>Exhibit A</u> had a deadline. In the context of the letter, the unsophisticated consumer would not understand the phrase "we are not obligated to renew this offer" to mean that "renewal [of the settlement offer is a] possibility but that it is not assured." *See Evory*, 505 F.3d at 775-76.

27. Upon information and belief, the deadline in <u>Exhibit A</u> to respond to the settlement offer is a sham. There is no actual deadline. The sole purpose of the purported deadline is to impart in the consumer a false sense of urgency.

5

28. Upon information and belief, Client Services had authority from the creditor to settle the Plaintiff's accounts for the amounts offered by <u>Exhibit A</u>, or less, at any time.

29. <u>Exhibit A</u> thus overshadows and contradicts the statement that "We are not obligated to renew this offer" by including it after the instruction that "This offer is contingent upon timely receipt of your payment. If payment is not received in our office within forty (40) days of the date of this notice, this offer will be withdrawn and will be deemed null and void, with the remainder of the balance being due and owing."

30. The 30-day validation period identified in <u>Exhibit A</u> would end at or around the same time the consumer would feel compelled to mail out a payment to take advantage of the settlement offer in <u>Exhibit A</u> before it expires. *See* 15 U.S.C. § 1692g(a).

31. Assuming the consumer sought verification at or near the end of the statutorily mandated 30-day validation period, there would be no way for Client Services to provide verification in time for the consumer to tender payment in acceptance.

32. The unsophisticated consumer, realizing that the debt could not be verified before the settlement offer in <u>Exhibit A</u> expired and that Client Services was not obligated to renew the offer would be unsure how, or whether, they could seek verification of the debt but accept the settlement offer if the debt could be verified.

33. The settlement offer in <u>Exhibit A</u> is confusing to the unsophisticated consumer because it requires that the consumer tender a payment within the validation period or shortly thereafter, but does not explain how the validation notice and settlement "deadline" fit together. *Bartlett v. Heibl*, 128 F.3d 497, 500 (7th Cir. 1997) ("In the typical case, the letter both demands payment within thirty days and explains the consumer's right to demand verification within thirty

6

days. These rights are not inconsistent, but by failing to explain how they fit together the letter confuses.").

34. Exhibit A does not explain how, or even whether, a consumer may request verification of the debt and accept the settlement offer if the debt is verified. *See, e.g.*, *Bartlett*, 128 F.3d 497, 501-02 (7th Cir. 1997).

35. Any explanatory language should make clear whether a dispute will extend the settlement offer while the debt collector is in the process of complying with its obligation to verify the debt.

36. Because the settlement offer in Exhibit A expires at or around the same time as the validation period, there is an apparent contradiction between the settlement offer and the validation notice. *See Flood v. Mercantile Adjustment Bureau, LLC*, 176 P.3d 769, 776 (Colo. 2008) ("The extended time for taking advantage of the settlement offer – couched within a personalized assurance that all her rights will be preserved through oral communication – effectively misleads the consumer into delaying the transmission of the consumer's written request for the verifying documentation, thereby causing the loss of valuable consumer rights.").

37. In the context of an initial settlement letter, the unsophisticated consumer would believe that the foregoing of validation rights is a material aspect of the settlement offer and would understand the language that the debt collector is "not obligated to renew" to mean that the debt collector would most likely *not* renew the offer, since the debtor would no longer have validation rights to bargain away. *See, e.g., Glackin v. LTD Fin. Servs., L.P.*, 2013 U.S. Dist. ELXIS 108031, at *7-8 (E.D. Mo. Aug. 1, 2013) ("an unsophisticated consumer would likely believe that setting up payment arrangements *would act as a waiver of the right to dispute the debt*.") (emphasis added).

7

Case 2:19-cv-01832-LA    Filed 12/13/19    Page 7 of 16    Document 1

38. The unsophisticated consumer would not know whether requesting verification of the debt would be interpreted as a rejection of the settlement offer.

39. Alternatively, the unsophisticated consumer, wishing to take advantage of the settlement offer as long as it could be verified, could tender her payment to accept the settlement offer along with the notice of dispute, but even then they would have no way of knowing whether or how she could receive her money back from Client Services if it were unable to verify the debt or if the debt actually is not valid.

40. In fact, though the unsophisticated consumer would not realize it, the debt collector need not even verify the debt as long as it ceases further attempts to collect the debt. *See Jang v. A.M. Miller & Assocs.*, 122 F.3d 480, 483 (7th Cir. 1997).

41. The plain language of <u>Exhibit A</u> is unclear as to how Client Services would proceed in the event that the consumer mailed a dispute along with a payment that was intended to accept the settlement offer in the case that the debt could be verified.

42. Where a consumer mailed a dispute along with a payment that was intended to accept a settlement offer in <u>Exhibit A</u>, under the terms of <u>Exhibit A</u>, Client Services might:

   a. Hold the payment in escrow pending verification of the debt;

   b. Interpret the payment as an accord and satisfaction and settlement in full that contractually bars the consumer from requesting verification of the debt; or

   c. Send the payment back to the consumer pending verification of the debt, in which case the consumer may no longer be able to settle the debt because the offer would have expired while the debt collector was obtaining verification.

43. Where a consumer mails a dispute along with a payment that was intended to accept a settlement offer with an impending expiration date, whether the FDCPA requires a debt collector to proceed along any of the above paths is an open question in the Seventh Circuit. *See Bailey v.*

8

*TRW Receivables Management Services, Inc.*, 1990 U.S. Dist. LEXIS 19638, *7-8 (D. Haw. Aug. 16, 1990) ("There is nothing in the statute which indicates that a debt collector is not required to provide verification where a consumer requests it after paying the debt.").

44. Whether accepting payment, or even holding payment pending verification, is a "further attempt to collect the debt" is an open question in the Seventh Circuit. *See Sambor v. Omnia Credit Servs.*, 183 F. Supp. 2d 1234, 1243 (D. Haw. Feb. 5, 2002) ("Because the debt collector in *Bailey* had already collected the debt, there was no collection to 'cease' pending validation. In *Bailey*, keeping the consumer's money was tantamount to continuing collection activity.").

45. The unsophisticated consumer would be confused as to whether she had effectively exercised her validation rights by sending a payment along with a dispute letter.

46. The unsophisticated consumer may unwittingly reject a settlement offer by tendering the settlement payment along with her dispute letter. If the debt collector treated the acceptance of a settlement offer as a continuing attempt to collect a debt, *see Sambor*, 183 F. Supp. 2d at 1243, the debt collector would need to return the settlement payment pending verification of the debt.

47. Because the debt collector may be legally obligated to return the consumer's settlement payment pending verification of the debt, the expiration date would lapse before the consumer had effectively made the settlement payment. By the time the debt collector verified the debt, the consumer would have missed her chance to settle the debt even though she attempted to tender a payment before the expiration date.

48. Ultimately, the purpose and effect of providing a settlement offer with a letter containing the validation notice is to discourage the unsophisticated consumer from submitting a written dispute.

49. Additionally, Exhibit A states:

**DEBT VALIDATION NOTICE**

50. The "DEBT VALIDATION NOTICE" of page 4 of Exhibit A is blank.

51. Plaintiff read Exhibit A.

52. Plaintiff was misled and confused by Exhibit A.

53. The unsophisticated consumer would be misled and confused by Exhibit A.

54. Plaintiff had to spend time and money investigating Exhibit A, and the consequences of any potential responses to Exhibit A.

### *The FDCPA*

67. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) ("'a plaintiff who receives misinformation form a debt collector has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.'") (quoting

*Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, 2017 WL 2539782, at *3 (E.D. Wis. June 12, 2017)); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("Spuhler I") ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Long v. Fenton & McGarvey Law Firm P.S.C.*, 223 F. Supp. 3d 773, 777 (S.D. Ind. Dec. 9, 2016) ("While courts have found that violations of other statutes . . . do not create concrete injuries in fact, violations of the FDCPA are distinguishable from these other statutes and have been repeatedly found to establish concrete injuries."); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's

11

standing based upon alleged FDCPA statutory violation); *Lanev. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)).For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

68. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

69. Misrepresentations of the character, amount or legal status of any debt, including language confusing or obscuring purported settlement offers, injure or risk injury to interests expressly protected by Congress in the FDCPA. *See See Oloko v. Receivable Recovery Servs.*, 2019 U.S. Dist. LEXIS 140164 (N.D. Ill. Aug. 19, 2019); *Untershine v. Encore Receivable Mgmt., Inc.*, 18-cv-1484 (E.D. Wis. August 9, 2019); *Richardson v. Diversified Consultants*, No. 17-cv-4047, 2019 U.S. Dist. LEXIS 118786 *10-11 (N.D. Ill. July 17, 2019); *see also Pierre v.*

12

*Midland Credit Mgmt., Inc.*, 2017 WL 1427070, at *4 (N.D. Ill. Apr. 21, 2017); *Saenz v. Buckeye Check Cashing of Illinois*, 2016 WL 5080747, at *1-2 (N.D. Ill. Sept. 20, 2016); *Bernal v. NRA Grp., LLC*, 318 F.R.D. 64, 72 (N.D. Ill. 2016) (holding that Plaintiff had standing to challenge misleading communication sent to him because the communication violated his "right to be free from such misleading communications"). Such misrepresentations may cause consumers to make incorrect decisions about their finances or make payments to incorrect parties.

70. 15 U.S.C. § 1692e generally prohibits: "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

71. 15 U.S.C. § 1692e(5) specifically prohibits: "the threat to take any action that cannot legally be taken or that is not intended to be taken."

72. 15 U.S.C. § 1692e(10) specifically prohibits: "The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

73. 15 U.S.C. § 1692g(b) states, in relevant part:

> Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

74. The statement on Exhibit A "DEBT VALIDATION NOTICE" followed by a blank page is a material misrepresentation because the unsophisticated consumer would be left wondering what the important information was and whether the debt collector had failed to include this information. *Papetti v. Rawlings Fin. Servs., LLC*, 121 F. Supp. 3d 340, 353 (S.D.N.Y. Aug. 5, 2015).

**COUNT I – FDCPA**

13

75. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

76. By including the statement "we are not obligated to renew this offer" after the statement "Your payment must be received in our office by the date indicated above, in good funds, or this offer will be null and void," Exhibit A does not clearly indicate to the consumer that there was a renewal possibility if the consumer did not make a payment on the account prior to the expiration date.

77. Defendant violated 15 U.S.C. §§ 1692e, 1692e(5), and 1692e(10).

## COUNT II – FDCPA

78. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

79. By including settlement offers which purportedly expired on or soon after the expiration of the validation period, Exhibit A overshadows the validation notice and is therefore false, deceptive, and misleading as to the consumers right to dispute and/or request verification of their alleged debt.

80. Defendant violated 15 U.S.C. §§ 1692e, 1692e(5), 1692e(10), and 1692g(b).

## COUNT III – FDCPA

81. Plaintiff incorporates by reference as if fully set forth herein the allegations in the preceding paragraphs of this Complaint.

82. Count III is brought on behalf of Plaintiff Voeks.

83. Exhibit A states "DEBT VALIDATION NOTICE" on page 4 but the page is blank.

84. The unsophisticated consumer would be confused as misled as to whether there was additional information that should have been conveyed.

85. Exhibit A is misleading and confusing to the unsophisticated consumer who would not understand why she was sent a "debt validation notice" when the sheet was blank.

86. Defendant violated 15 U.S.C. §§ 1692e and 1692e(10).

## CLASS ALLEGATIONS

87. Plaintiff brings this action on behalf of two classes.

88. Class I consists of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by Exhibit A to the complaint in this action, (c) seeking to collect a debt for personal, family, or household purposes, (d) between December 13, 2018 and December 13, 2019, inclusive, (e) that was not returned by the postal service.

89. Class II consists of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter with a page labeled "DEBT VALIDTION NOTICE" (c) that did not contain a debt validation notice, (d) seeking to collect a debt for personal, family, or household purposes, (e) between December 13, 2018 and December 13, 2019, inclusive, (f) that was not returned by the postal service.

90. Each Class is so numerous that joinder is impracticable. On information and belief, there are more than 50 members of each Class.

91. There are questions of law and fact common to the members of each class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether the Defendant complied with 15 U.S.C. § 1692e, 1692e(5), 1692e(10), and 1692g.

92. Plaintiff's claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

93. Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

94. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## **JURY DEMAND**

95. Plaintiff hereby demands a trial by jury.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: December 13, 2019 **ADEMI & O'REILLY, LLP**

By: /s/ John D. Blythin
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com